BOWMAN, Circuit Judge.
 

 Truman Aaron Grooms was convicted by a jury on four counts of abusive sexual contact with three nine-year-old girls.
 
 See
 
 18 U.S.C. §§ 1153, 2244(a)(1), and 2245(3) (1988). The District Court
 
 [1]
 
 sentenced him to 40 months of incarceration and three years of supervised release.
 

 Grooms appeals his conviction on three grounds. First, Grooms contends that the District Court erred when it admitted certain hearsay statements under the residual hearsay exception. Next, Grooms argues that the District Court erred by not allowing him to impeach a witness with a prior inconsistent statement. Finally, Grooms argues that the District Court violated the provisions of 18 U.S.C. § 3509(i) (Supp.II 1990) by allowing a witness to remain in the courtroom as an adult attendant for the child witnesses and by not videotaping the adult attendant during the children’s testimony. We affirm.
 

 In April 1991, Grooms’s nine-year-old niece, I.E., told her third-grade teacher and Brownie Troop leader, Georgine Tyon, that Grooms had touched her “private part.” (Trial Tr. at 34, 41). Similar complaints about Grooms’s actions came to Tyon from J.E., I.E.’s twin sister, and J.B., the third nine-year-old girl. Tyon reported the girls’ allegations of sexual abuse, which led to Grooms’s indictment.
 

 We turn first to Grooms’s issue regarding the admission of hearsay evidence. At trial, the three girls testified, giving their accounts of what had occurred between Grooms and themselves. The government then called FBI Agent Paul Pritchard, who in his testimony recounted statements that the three girls made to him
 
 *427
 
 during an interview at the girls’ school. The court admitted this testimony by Pritchard under the residual hearsay exception, Rule 803(24) of the Federal Rules of Evidence. Grooms argues that this ruling is reversible error. We disagree.
 

 The District Court’s ruling on the admissibility of evidence must be affirmed unless we are persuaded the court clearly abused its discretion.
 
 United States v. Dorian,
 
 803 F.2d 1439, 1443 (8th Cir.1986);
 
 United States v. Renville,
 
 779 F.2d 430, 439 (8th Cir.1985). The discretion of the trial court to admit hearsay evidence under Rule 803(24) is to be exercised within the framework of the following criteria:
 

 (1) The statement must have circumstantial guarantees of trustworthiness equivalent to the twenty-three specified exceptions listed in rule 803;
 

 (2) The statement must be offered as evidence of a material fact;
 

 (3) The statement must be more probative on the point for which it is offered than any other evidence the proponent can procure through reasonable efforts;
 

 (4) The general purposes of the Federal Rules and the interests of justice must best be served by admission of the statement into evidence;
 

 (5) The proponent of the evidence must give the adverse party the notice specified within the rule.
 

 Dorian,
 
 803 F.2d at 1443;
 
 Renville,
 
 779 F.2d at 439. Grooms argues that Agent Pritchard’s statements fail to satisfy criterion (1) and criterion (3) of the above-listed criteria.
 

 With respect to criterion (3), Grooms contends that the girls’ in-eourt testimony is more probative than Agent Pritchard’s testimony. We are not persuaded. In
 
 United States v. Shaw,
 
 824 F.2d 601 (8th Cir.1987),
 
 cert. denied,
 
 484 U.S. 1068, 108 S.Ct. 1033, 98 L.Ed.2d 997 (1988), the child victim testified at length as to the alleged incidents of abuse. The district court also admitted, under Rule 803(24), the testimony of a social worker who recounted the incidents the child victim had told her about during several meetings. In affirming the district court, we emphasized that the social worker’s testimony was more probative than the child’s because it contained specific details as to the dates of the abuse that the victim could not provide.
 
 Id.
 
 at 610. Similarly, in the instant case, the three young girls testified, but Agent Pritchard’s testimony was more detailed because it contained specific descriptions of the incidents including the dates and places of the abuse. Furthermore, all three girls testified that they, remembered the events more clearly when they spoke with Agent Pritchard than they did at the time of the trial. We therefore conclude that Agent Pritchard’s testimony had the probative value required by criterion (3).
 

 As to Grooms’s contention that Agent Pritchard’s testimony lacked circumstantial guarantees of trustworthiness (criterion'(1)), it is the law of our circuit that the reliability of statements made by child abuse victims to other persons must be examined, “in light of the circumstances at the time of the declaration and the credibility of the declarant.”
 
 Renville,
 
 779 F.2d at 440;
 
 Dorian,
 
 803 F.2d at 1444.
 

 In the present case, there are several circumstantial guarantees of trustworthiness. First, the statements were made to an FBI agent with special training in interviewing child victims. Agent Pritchard testified that he asked the girls open-ended questions and avoided asking them leading questions. The girls were nine years old and there is nothing in the record to suggest that they were likely to have fabricated their stories of abuse. They identified and marked anatomically correct drawings during their interviews with Agent Pritch-ard and discussed the incidents of sexual abuse in a childlike way.
 
 See Dorian,
 
 803 F.2d at 1445 (the childish terminology the five-year-old girl used in her description of the abuse, along with her demonstration of her father’s actions, “has the ring of veracity, and is entirely appropriate for a child of [her] tender years” (quoting
 
 United States v. Nick,
 
 604 F.2d 1199, 1204 (9th Cir.1979)
 
 [2]
 
 )). All three girls testified at tri
 
 *428
 
 al and were subject to extensive cross-examination. Thus, the jury could weigh the victims’ statements made to Agent Pritch-ard and accord the statements whatever weight the jury deemed appropriate.
 
 See Renville,
 
 779 F.2d at 440. We conclude that Agent Pritchard’s testimony possessed sufficient guarantees of trustworthiness to satisfy criterion (1) of the
 
 Dorian
 
 criteria for admissibility under Rule 803(24).
 

 We hold that the admission of Agent Pritchard’s testimony was not an abuse of the trial court’s discretion.
 

 Next, as fleetingly mentioned in Grooms’s brief, Grooms contends that the introduction of Agent Pritchard’s testimony violated his sixth amendment right to confront witnesses against him. We disagree. In
 
 United States v. Spotted War Bonnet,
 
 933 F.2d 1471 (8th Cir.1991),
 
 cert. denied,
 
 — U.S. —, 112 S.Ct. 1187, 117 L.Ed.2d 429 (1992), we addressed a similar confrontation clause issue and stated that “[t]he Clause is satisfied when the hearsay declarants, here the alleged child victims, actually appear in court and testify in person.”
 
 Id.
 
 at 1473. Here, the girls did appear in court and did testify in person. All three girls were subject to rigorous cross-examination, and although the trial transcript indicates that the cross-examination was limited by the girls’ lack of memory, we noted in
 
 Spotted War Bonnet:
 

 [Wjhen the contention is made that the live testimony of a given witness satisfies Confrontation Clause concerns as to the admissibility of out-of-court statements made by the same witness, the question is whether there is “an
 
 opportunity
 
 for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.”
 

 Id.
 
 at 1474 (emphasis in original) (quoting
 
 Delaware v. Fensterer,
 
 474 U.S. 15, 20, 106 S.Ct. 292, 295, 88 L.Ed.2d 15 (1985)).
 

 In the present case, the girls were subject to extensive cross-examination. They all testified that they knew the meaning of telling the truth, and they testified to the best of their recollection regarding the incidents of abuse. Although all three girls testified that they remembered the events better when they spoke with Agent Pritch-ard, their lack of memory does not render their cross-examination constitutionally deficient under the confrontation clause.
 
 See United States v. Owens,
 
 484 U.S. 554, 564, 108 S.Ct. 838, 845, 98 L.Ed.2d 951 (1988) (the confrontation clause is not violated “by admission of an identification statement of a witness who is unable, because of a memory loss, to testify concerning the basis for the identification”). Hence, we conclude that Agent Pritchard’s testimony did not violate Grooms’s sixth amendment right to confront witnesses against him.
 

 Grooms also contends that the District Court abused its discretion by not allowing the defense to use an alleged prior inconsistent statement to impeach a government witness. P.E., the mother of I.E. and J.E., testified in the government’s casein-chief. No testimony was elicited during either her direct or cross-examination about the children’s having been coached by their father or about any prior statements she may have made on that subject, nor were the children asked whether any such coaching had occurred, nor was the father called as a witness. During the defendant’s case, Grooms’s counsel recalled P.E. and specifically asked her if she had made statements to a friend, Mary Jane Middletent, that P.E. believed that the girls had been coached by their father in making their allegations of sexual abuse. P.E. denied making any such statement, and the defendant called Middletent (who was a cousin of the defendant and a frequent visitor in his home) to have her testify concerning P.E.’s alleged prior inconsistent statement to her. The District Court sustained the government’s objection to Middletent’s testimony.
 

 Although a prior inconsistent statement is admissible under Rule 613(b) of the Federal Rules of Evidence, and although Rule 607 permits a party to impeach the credibility of its own witness, a witness may not be impeached on a collateral matter by the use of extrinsic evidence; “self-
 
 *429
 
 contradiction of a witness by prior inconsistent statements may be shown only on a matter material to the substantive issues of the case.”
 
 Cwach v. United States,
 
 212 F.2d 520, 530 (8th Cir.1954). Thus, Middle-tent’s testimony was not admissible for impeachment purposes because what P.E. may or may not have said to Middletent about what P.E.- did or did not believe her husband had or had not done in regard to coaching the girls is not a “matter material to the substantive issues of the case,”
 
 id.,
 
 and, “impeachment by prior inconsistent statement may not be permitted where employed as a mere subterfuge to get before the jury evidence not otherwise admissible.”
 
 United States v. Morlang,
 
 531 F.2d 183, 190 (4th Cir.1975). P.E.’s alleged statement to Middletent not only was inadmissible hearsay; even beyond that, the probative value of Middletent’s testimony was so substantially outweighed by the danger of confusing the issues and misleading the jury that it was inadmissible under Rule 403 of the Federal Rules of Evidence. The District Court did not abuse its discretion in excluding this evidence.
 
 [3]
 

 Next, Grooms argues that the District Court erred in allowing Georgine Tyon to serve as the girls’ adult attendant pursuant to 18 U.S.C. § 3509(i) because Tyon allegedly prompted the girls’ testimony and she was not videotaped during their testimony, as the statute would appear to require.
 
 [4]
 
 Tyon was the girls’ teacher and Brownie Troop leader; she also was the government’s first witness.
 

 Grooms’s contention that Tyon’s presence prompted the girls’ testimony is unsupported. The girls testified in open court and the record is void of anything to suggest that Tyon prompted them in any way. Under the statute, the girls were entitled to be accompanied by “an adult attendant to provide emotional support,” 18 U.S.C. § 3509(i), and the District Court did not err in allowing Tyon to serve in that capacity.
 

 Grooms’s argument that it was reversible error not to videotape Tyon was not raised in the trial court and has been raised for the first time in this appeal. The record contains nothing to indicate that the subject of videotaping ever was mentioned to the trial judge. We therefore reach this issue only under the plain error standard of review.
 
 United States v. Balfany,
 
 965 F.2d 575, 579 (8th Cir.1992). In order to find plain error, we would have to conclude that the failure to videotape Tyon during the girls’ testimony has resulted in a miscarriage of justice.
 
 See United States v. Helmet,
 
 769 F.2d 1306, 1317 (8th Cir.1985). Even assuming
 
 arguendo
 
 that the section 3509(i) videotaping requirement is applicable in the circumstances of this case — a question of statutory construction that we need not and do not decide — we are unable to say that Grooms’s conviction represents a miscarriage- of justice. This case thus is
 
 *430
 
 not one that properly could be reversed under the plain error standard of review.
 

 Grooms's conviction is affirmed.
 

 [1]
 

 . The Honorable Donald J. Porter, Senior United States District Judge for the District of South Dakota.
 

 [2]
 

 . The exact wording in
 
 Nick
 
 is as follows: "has the ring of verity and is entirely appropriate to a
 
 *428
 
 child of his tender years."
 
 Nick,
 
 604 F.2d' at 1204.
 

 [3]
 

 . We do not mean to suggest that proper questions as to whether the father had coached the girls could not have been propounded. We see no reason why it would not have been permissible for the defendant to have called the father as a witness and to have asked him whether he had coached the girls, or to have asked the girls whether he had coached them. Other witnesses could have been asked whether they had seen the father coach the girls, or otherwise had actual knowledge of his coaching them. But the defendant approached this issue only in its questioning of P.E., and even then did not ask her straightforwardly whether she had seen any coaching taking place. Instead, the questioning veered quickly to the purported conversation between P.E. and Middletent, with Middletent’s testimony then being offered to show both the fact and the substance of the conversation. For the reasons stated in the text, Middletent’s testimony was properly rejected by the trial court.
 

 [4]
 

 . 18 U.S.C. § 3509(i) states:
 

 (i) Adult Attendant. — A child testifying at or attending a judicial proceeding shall have the right to be accompanied by an adult attendant to provide emotional support to the child. The court, at its discretion, may allow the adult attendant to remain in close physical proximity to or in contact with the child while the child testifies. The court may allow the adult attendant to hold the child’s hand or allow the child to sit on the adult attendant’s lap throughout the course of the proceeding. An adult attendant shall not provide the child with an answer to any question directed to the child during the course of the child’s testimony or otherwise prompt the child. The image of the child attendant, for the time the child is testifying or being deposed, shall be recorded on videotape.